IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Magistrate Judge Kathleen M. Tafoya**

Civil Action No. 07-cv-00663-LTB-KMT

MICHAEL WHITINGTON,

      Plaintiff,

v.

CHRISTINE MOSCHETTI,
LT. TRUJILLO,
C/O RAEL,
CAPT. GONZALES,
LT. STEINBECK,
WARDEN OF DRDC IN 1998,
      (WILLIAM BOKROS),
PLAINTIFF'S CASE MANAGER IN 1998 AT DRDC,
      (LARRY TURNER),
CAPT. BUTTLER (sic) (BUTLER),
LIMON'S IWLP SUPERVISOR,
WARDEN ESTEP,
CAPT. MICHAELS,
C/O GONZALES,
ASS. WARDEN OF FLCF,
      (CHERYL SMITH),
CDOC MEDICAL DIRECTOR,
JOE ORTIZ,
CDOC MENTAL HEALTH DIRECTOR,
WILLIAM ZALMAN,
THOMAS BULLARD,
E. LITTLE,
LT. VAN METER,
WARDEN LAYBA,
SCCF PROGRAMS MANAGER,
      (KIM THOMPSON),
      Defendants.

---

**RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE**
_____

**Magistrate Judge Kathleen M. Tafoya**

This matter is before the court on Defendant's "Motion for Summary Judgment" ("Mot.")

(Doc. No. 56, filed on May 30, 2008).

## PROCEDURAL HISTORY

Plaintiff filed his initial Complaint on April 3, 2007 (Doc. No. 3). He filed his

Amended Complaint on April 23, 2007 (Doc. No. 4). The court found that the Amended

Complaint to be deficient because it failed to comply with proper pleading requirements, and

Plaintiff was ordered to file a second amended complaint. (*See* Order by Magistrate Boland,

Doc. No. 6, filed May 8, 2007). Plaintiff's Second Amended Complaint was filed on July 2,

2007 ("Compl.") and is now the operative Complaint. Defendants filed their motion for

summary judgment on May 30, 2008. No response or reply has been filed. This matter is ripe

for review and recommendation.

## FACTUAL BACKGROUND

The following facts are taken from Plaintiff's Complaint and the parties' submissions

with respect to this Recommendation. Plaintiff is currently incarcerated at the Colorado

Department of Corrections ("CDOC").

Plaintiff was classified as a violent offender in 1998. (Compl. at ¶ 9). He was transferred

to Arkansas Valley Correctional Facility ("AVCF") in July 2004. (*Id.* at ¶ 26). While at AVCF,

Plaintiff filed grievances and complaints about staff conduct and sent letters to the warden about Captain Eugene Gonzales ("Captain Gonzales")[1] and Lieutenant Robert Steinbeck ("Defendant Steinbeck"). (*Id*. at ¶ 27).

In August of 2004 Plaintiff wrote a letter to Christine Moschetti ("Defendant Moschetti") challenging the calculation of good time credits applied towards his sentence. (*Id*. at ¶ 18). Afterwards, Moschetti, in a November 20, 2004 letter, informed Plaintiff that after a review of his inmate file, it was determined that Plaintiff's parole eligibility date was to be extended nine years due to the incorrect calculations previously made which did not properly account for the Plaintiff's violent offender status. (*Id*)

A few months later, on January 17, 2005, Plaintiff received a class two disciplinary report for violation of the Code of Penal Discipline or Rule;[2] a hearing on this report was held on January 26, 2005. (*Id*. at ¶ 28). Captain Gonzales approved the class two Rule violation and conviction on February 1, 2005. (*Id*. at ¶ 31).

In February, 2005, Plaintiff's canteen order containing a radio was rejected. (*Id*. at ¶ 36). Because Plaintiff was not allowed to have a radio, it was taken away from him and placed in storage. (*Id*.) Plaintiff filed a grievance challenging the seizure of his radio, (*id*. at ¶ 37), however the radio was ordered destroyed by Defendant Steinbeck. (*Id*. at ¶ 40).

---

[1] There are two defendants with the last name, "Gonzales.

[2] In the Complaint, Plaintiff refers to his violation as a Rule violation. (Compl. at ¶ 28.), but Defendants refer to it as a violation of the Code of Penal Discipline (Def. Mot. at 9.) There is no documentation in the record that clarifies this ambiguity.

On February 8, 2005, Captain John Rael ("Defendant Rael") withheld Plaintiff's canteen, however did release it to him ten days later after the other inmates had received their canteens. (*Id*. at ¶ 43-45).

On March 18, 2005, Captain Gonzales approved Plaintiff's transfer to the Limon Correctional Facility ("LCF"), completing all phases necessary to effectuate the transfer. The transfer actually occurred on April 12, 2005. (*Id*. at ¶ 52). Plaintiff began working in the Inmate Work Labor Program ("IWLP") work crew upon his transfer to LCF but later changed to a kitchen job. (*Id*. at ¶¶ 106-09). He was released from the kitchen job because of medical restrictions and on July 11, 2005, was placed on a temporary IWLP crew. (*Id*. at ¶ 111). While at LCF, the Plaintiff filed grievances for assault, officer conduct, lack of jobs, interference with legal mail, and intimidation by the warden. (*Id*. at ¶¶ 64-65).

Plaintiff was transferred to Fort Lyon Correctional Facility ("FLCF") on August 26, 2005. (*Id*. at ¶ 67). At FLCF, the Plaintiff wrote grievances and letters to the warden challenging the staff's conduct and the warden's policies. (*Id*.). He also assisted other inmates in drafting their grievances and complaints. (*Id*. at ¶ 76). On January 14, 2006, subsequent to Plaintiff's transfer out of FLCF, C/O Ricky Gonzales ("Defendant R. Gonzales") returned to the sender mail from the U.S. District Court. (*Id*. at ¶ 70).

Plaintiff was housed at the Sterling Correctional Facility ("SCF") from approximately November 10, 2005 until sometime in August, 2006, when Plaintiff was transferred to the San Carlos Correctional Facility ("SCCF") (*Id*. at ¶ 67). While at SCF, on June 15, 2006, Plaintiff received a letter from a friend that had the return address torn off. After he was transferred to

SCCF, Plaintiff was told that he needed to take drug and alcohol classes before getting treatment for his Hepatitis-C. (*Id*. at ¶ 143.)

## CLAIMS

As to each of the named defendants, Plaintiff brings his allegations against them in their individual capacities. (Compl. at ¶ 24.) Plaintiff brings official capacity claims only against Joe Ortiz, William Zalman the CDOC Mental Health Director and CDOC Medical Director. (*Id*. ¶ 25.) Defendants CDOC Mental Health Director, CDOC Medical Director and Limon's IWLP Supervisor, to the extent either such job titles or persons exist, have not been served.

In Claim One, Plaintiff alleges, "The defendants violated the plaintiff's 14th Amend. Right to due process in a protected liberty interest" when they classified him as a violent offender. (*Id*. at 4.) He names the 1998 Warden of DRDC, identified later as William Bokros, and Plaintiff's Casemanager in 1998 at DRDC, identified as Larry Thompson in Claim One. Neither Bokros nor Thompson appear in any other claims.

In Claim Two, Plaintiff alleges, "The defendants violated the plaintiff's 1st Amendment Right by retaliating against him for exercising his 1st amendment right." (*Id*. at 5.) Claim Two contains several sub-claims alleging that Defendants acted in retaliation against him in violation of his constitutional rights under the First and Fourteenth Amendments when they: (1) reclassified him from a non-violent offender to violent offender, which caused his parole eligibility date to be extended nine-years; (2) upgraded his disciplinary report for a violation of a Code of Penal Discipline or Rule from a class three to a class two offense; (3) destroyed his radio; (4) wrongfully and intentionally delayed his canteen order; and (5) transferred him to a

number of different prisons within a short time frame. Additionally, Claim Two alleges that Defendant R. Gonzales marked legal mail "return to sender" in retaliation for Plaintiff's grievances filed against R. Gonzales after Plaintiff had been transferred to another prison, causing him to miss a court deadline. Claim Two contains allegations against Defendants Capt. Gonzales, Moschetti, Steinbeck, Real, Trujillo, Zalman, Butler, R. Gonzales, Michaels, Smith and Estep.

In Claim Three, Plaintiff asserts, "The defendants violated the plaintiff's due process and equal protection rights of the 14th Amend. Have discriminated against the plaintiff in violation of 29 U.S.C. §794 and 42 U.S.C. §12101 due to his mental disabilities." (*Id*. at 6). Plaintiff claims he was prevented from working in a meaningful and continuous manner because of his mental disability. (*Id*. at ¶¶ 88-89). Claim Three contains allegations against Defendants Leyba, Thompson, Ortiz, Butler and IWPL Supervisor.

In Claim Four, Plaintiff claims his rights under the First Amendment and Fourteenth Amendment were violated because he received a letter from a friend that had the return address torn off. (*Id*. at ¶¶ 116; 130.) He alleges this constituted a failure to deliver his mail and that the defendants did not follow proper mailroom procedures. *(Id.).* Claim Four contains allegations against Defendants Little, Van Meter and Bullard.

In Claim Five, Plaintiff asserts he was subjected to cruel and unusual punishment in violation of the Eighth Amendment when his requests for medical treatment for Hepatitis-C were denied and delayed. (*Id*. at ¶ 137.) Claim Five contains allegations against Defendants Bullard

and Ortiz, as well as unserved Defendants CDOC Medical Director and CDOC Mental Health Director.

In their motion, Defendants argue that the Complaint should be dismissed because: (1) any claims which accrued prior to April 3, 2005 are barred by the statute of limitations; (2) the claim as to the treatment of his Hepatitis-C fails to state an Eighth Amendment claim; (3) the claims of retaliation fail as a matter of law; (4) the claims relating to denial of work or programs fail to state a §1983 claim upon which relief can be granted; (5) the equal protection claims fail as a matter of law; and (6) the claim for failure to follow CDOC mail policy does not state a claim under §1983. (Mot. at 8, 11, 14, 17, 19, 23).

## STANDARD OF REVIEW

### A. Pro Se Plaintiff

Because Plaintiff appears *pro se*, the court "review[s] his pleadings and other papers liberally and hold[s] them to a less stringent standard than those drafted by attorneys." *Trackwell v. United States*, 472 F.3d 1242, 1243 (10th Cir. 2007) (citations omitted). *See also Haines v. Kerner*, 404 U.S. 519, 520–21 (1972) (holding allegations of a *pro se* complaint "to less stringent standards than formal pleadings drafted by lawyers"). However, a *pro se* litigant's "conclusory allegations without supporting factual averments are insufficient to state a claim upon which relief can be based." *Hall v. Bellmon,* 935 F.2d 1106, 1110 (10th Cir. 1991). A court may not assume that a plaintiff can prove facts that have not been alleged, or that a defendant has violated laws in ways that a plaintiff has not alleged. *Associated Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters*, 459 U.S. 519, 526 (1983). *See also Whitney v.*

*New Mexico*, 113 F.3d 1170, 1173–74 (10th Cir. 1997) (court may not "supply additional factual allegations to round out a plaintiff's complaint"); *Drake v. City of Fort Collins*, 927 F.2d 1156, 1159 (10th Cir. 1991) (the court may not "construct arguments or theories for the plaintiff in the absence of any discussion of those issues").

### B.     Summary Judgment

Pursuant to Rule 56(c) of the Federal Rules of Civil Procedure, the court may grant summary judgment where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c) (2006); *see Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248–50 (1986); *Concrete Works, Inc. v. City & County of Denver*, 36 F.3d 1513, 1517 (10th Cir. 1994). The moving party bears the initial burden of showing an absence of evidence to support the nonmoving party's case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). "Once the moving party meets this burden, the burden shifts to the nonmoving party to demonstrate a genuine issue for trial on a material matter." *Concrete Works*, 36 F.3d at 1518 (citing *Celotex*, 477 U.S. at 325). The nonmoving party may not rest solely on the allegations in the pleadings, but must instead designate "specific facts showing that there is a genuine issue for trial." *Celotex*, 477 U.S. at 324; *see* Fed. R. Civ. P. 56(e) (2006). A fact in dispute is "material" if it might affect the outcome of the suit under the governing law; the dispute is "genuine" if the evidence is such that it might lead a reasonable jury to return a verdict for the nonmoving party. *Allen v. Muskogee*, 119 F.3d 837, 839 (10th Cir. 1997) (citing *Anderson*, 477 U.S. at 248). The court may consider only admissible evidence

8

when ruling on a summary judgment motion. *See World of Sleep, Inc. v. La-Z-Boy Chair Co.*, 756 F.2d 1467, 1474 (10th Cir. 1985). The factual record and reasonable inferences therefrom are viewed in the light most favorable to the party opposing summary judgment. *Byers v. City of Albuquerque*, 150 F.3d 1271, 1274 (10th Cir. 1998) (citing *Concrete Works*, 36 F.3d at 1517).

## ANALYSIS

### I. Statute of Limitations

Defendants argue that "any claims which accrued prior to April 3, 2005 are barred by the statute of limitations." (Mot. at 8.) "Limitations periods in §1983 suits are to be determined by reference to the appropriate state statute of limitations and the coordinate tolling rules. . . ." *Hardin v. Straub*, 490 U.S. 536, 539 (1989) (quotations omitted). Colorado Revised Statutes § 13-80-102, which provides for a two-year statute of limitations in such actions. *Blake v. Dickason*, 997 F.2d 749, 750-51 (10th Cir. 1993)*; Turner v. Schultz*, 130 F. Supp. 2d 1216, 1221 (D. Colo. 2001). A §1983 action "accrues when facts that would support a cause of action are or should be apparent." *Fratus v. Deland*, 49 F.3d 673, 675 (10th Cir. 1995) (quotations omitted).

Once a defendant satisfies his initial burden to show that a claim is untimely, the burden shifts to Plaintiff to establish a later accrual date of the statute of limitations or to show that there is a basis to toll the accrual date. *See Aldrich v. McCulloch Props., Inc.*, 627 F.2d 1036, 1041 n. 4 (10th Cir. 1980). There are no facts in the case that show that Plaintiff is entitled to equitable tolling, and he does not allege this defense.

Plaintiff's Second Amended Complaint presents the identical claims that were contained in Plaintiff's initial Complaint. He appears to have made an effort to cure the deficiencies as

directed by the court (failing to allege which claim is asserted pursuant to which statute and to summarize each claim sufficiently, and failing to clearly assert each defendant's personal participation in the alleged constitutional violations). Because Plaintiff's amendments relate back to his original complaint, pursuant to Fed. R. Civ. R. 15(c)(1)(B), the court will apply the statute of limitations under relation-back theories to the date of the original filing; therefore, claims based on events that accrued before April 3, 2005 (two years before the April 3, 2007 filing date of Plaintiff's initial Complaint) are barred.

Plaintiff's first claim, and part of his second, originate in 1998, when Denver Reception and Diagnostic Center Case Manager Larry Turner ("Defendant Turner") classified Plaintiff as a violent offender. (Compl. at ¶ 9; Mot. at 2). However, it is not clear that Plaintiff was aware of the classification at that time and it also appears that his original parole calculation did not take his status properly into account. In a review of Plaintiff's inmate file initiated by Plaintiff, Defendant Moschetti used Defendant Turner's classification as the basis on which to recalculate Plaintiff's good time credits, and explained her basis for re-calculation. (*Id.* ¶ 21). On , Defendant Moschetti's November 20, 2004 letter responding to Plaintiff's inquiry about his parole eligibility date. Unequivocally, this letter provided notice to Plaintiff that he was and had been classified as a violent offender. (Mot., attach.1, Moschetti Affidavit). (See, Compl. at ¶¶18-19.)

Therefore, the claims concerning Plaintiff's classification as a violent offender accrued on November 20, 2004 at the latest. The court finds that the claims against the two 1998

defendants who classified the Plaintiff as a violent offender and Defendant Moschetti with respect to the good time credit analysis are barred by the two-year statute of limitations.

Under the two-year statute of limitations, the following primary allegations are time barred because they occurred before April 3, 2005:

1.   The Plaintiff's classification as a violent offender disqualified him for real and substantial rights and privileges. (Compl. ¶ 11, Claim One against Defendants Bokros and Turner).

2.   Christine Moschetti retaliated against the Plaintiff by changing his time computation to a violent offender computation adding nine years to his statutory eligibility for parole and community placement. (*Id.* at ¶ 19, Claim Two against Defendant Moschetti).

3.   All claims associated with the allegedly enhanced the class three violation of the Code of Penal Discipline or Rule to class two in retaliation for the Plaintiff's grievances and letters challenging policies and staff conduct. (*Id.* at ¶ 34, Claim Two against Captain Gonzales, Defendant Steinbeck, and Warden Estep).

4.   February 2005 rejection of Plaintiff's canteen order containing a radio.  (*Id.* at ¶ 36, Claim Two against Defendant Steinbeck).

5.   All claims associated with the February 4, 2005 destroyed radio and the withholding or delay of canteen orders.  (*Id.* at ¶¶ 36 - 48, Claim Two against Defendants Steinbeck and Defendant Rael.

6.   All claims associated with the claim of retaliation in connection with the transfer of Plaintiff from AVCF to LCF.  (*Id.* at ¶¶ 49 - 61, Claim Two against Capt. Gonzales, Lt. Steinbeck, Lt. Trujillo and Zalman).

This Court finds that all the claims in Claim One against Defendant Warden of DRDC in 1998, William Bokros, and Defendant Plaintiff's CaseManager in 1998 at DRDC, Larry Turner and the claims in Claim Two against Defendants Capt. Gonzales, Moschetti, Lt. Steinbeck, C/O John Rael and Lt. Trujillo should be dismissed as barred by the statute of limitations.

## II.     Official Capacity Claims

The claims against the Defendants in their official capacities will be treated as claims against their employer, CDOC.  *Whitney*, 113 F.3d at 1173 (a suit against an individual in his official capacity is actually a suit against the agency which the individual represents).  State officials acting in their official capacities are not "persons" subject to liability under ¶ 1983.  *See Will v.  Michigan Dep't of State Police*, 491 U.S. 58, 66 (1989).  Accordingly, Defendants cannot be sued in their official capacities for damages under ¶ 1983.

Only Defendants Ortiz and Zalman have been sued in their official capacities claims.  Those allegations must be treated as claims against the CDOC.

The CDOC, as a department of the State of Colorado is protected by Eleventh Amendment immunity as are each of its correctional facilities.  *See Eastwood v. Department of Corrections*, 846 F.2d 627, 632 (10th Cir. 1988) (concluding that the Oklahoma Department of Corrections is arm of the state and should be entitled to absolute immunity).  *See also Griess v. Colorado*, 841 F.2d 1042, 1044-45 (10th Cir. 1988) (recognizing that State of Colorado and CDOC are immune from liability under the Eleventh Immunity); *Meade v.  Grubbs*, 841 F.2d 1512, 1525 (10th Cir. 1988) (the immunity conferred by the Eleventh Amendment extends to the state and instrumentalities); *see e.g., Alabama v.  Pugh,* 438 U.S. 781 (1978) (suit against Alabama Department of Corrections is barred by the Eleventh Amendment);

It is well established that "[a]bsent an unmistakable waiver by the state of its Eleventh Amendment immunity, or an unmistakable abrogation of such immunity by Congress, the amendment provides absolute immunity from suit in federal courts for states and their agencies."

*Ramirez v. Oklahoma Dep't of Mental Health*, 41 F. 3d 584, 588 (10th Cir. 1994) (*overruled on other grounds* by *Ellis v. University of Kansas Medical Center*, 163 F.3d 1186, 1194-97 (10th Cir.1998). The state of Colorado has not waived its Eleventh Amendment immunity, *See Griess* at 1044-45, and congressional enactment of 42 U.S.C. ¶1983 did not abrogate Eleventh Amendment immunity, *Quern v. Jordan*, 440 U.S. 332, 340-345 (1979).

Therefore, this court finds that the official capacity claims against Defendants Zalman and Ortiz should be dismissed.

### III.    Individual Capacity Claims

Personal or individual capacity suits "seek to impose personal liability upon a government official for actions he takes under color of state law," while an official capacity suit is "only another way of pleading an action against an entity of which an officer is an agent." *Kentucky v. Graham*, 473 U.S. 159 (1985) (internal quotation marks omitted).

### A.    Claim Two: Retaliation in Violation of First and Fourteenth Amendments

In Claim Two, Plaintiff alleges that his constitutional rights were violated when the Defendants transferred him to four different prisons within an eight-month time period. Plaintiff claims his was frequent transfers were in direct retaliation for the many grievances and complaints he continuously filed. Additionally, Plaintiff complains that Defendant R. Gonzales retaliated against him by returning court mail to the sender after the Plaintiff had been transferred to another prison facility, in lieu of forwarding the mail to Plaintiff.[3]

---

[3] In Claim Two, Plaintiff argues that as a result of his transfer out of FLCF, he was prevented from assisting other inmates with their complaints against the administration. (Compl at ¶ 76).

To state a retaliation claim based on an alleged violation of the First Amendment requires proof that: (1) the plaintiff was engaged in constitutionally protected activity; (2) the defendant's actions caused the plaintiff to suffer an injury that would sufficiently chill a person of ordinary firmness from continuing to engage in that activity; and (3) the defendants' actions were substantially motivated by plaintiff's involvement in the constitutionally protected activity. *Worrell v. Henry*, 219 F.3d 1197, 1212 (10th Cir. 2000). "Prison officials may not retaliate against or harass an inmate because of the inmate's exercise of his constitutional rights. . . [However,] [a]n inmate claiming retaliation must allege specific facts showing retaliation because of the exercise of the prisoner's constitutional rights." *Peterson v. Shanks*, 149 F.3d 1140, 1144 (10th Cir. 1998) (quotations omitted).

A plaintiff "must prove that 'but for' the retaliatory motive, the incidents to which he refers, including [any] disciplinary action, would not have taken place." *Smith v. Machner*, 899 F. 2d 940, 949 (10th Cir. 1990). Plaintiff also may show a "close temporal proximity" between the exercise of a constitutional right and the alleged retaliatory actions as proof of retaliatory motive. *Id.* at 948. To survive summary judgment, the plaintiff must present evidence from which a reliable fact-finder might conclude that the motive of the defendants was retaliation for his filing of prior or current lawsuits or grievances. *McDonald v. Hall*, 610 F.2d 16, 18 (1st Cir.

---

However, the Plaintiff does not have a protected interest in providing legal representation to other inmates. *See Smith v. Machner*, 899 F. 2d 940, 950 (1990). *Ervin v. Ciccone*, 557 F.2d 1260, 1262 (8th Cir. 1997).

1979).  Opinions, feelings, and suppositions are not by themselves sufficient.  *Mt. Healthy City School Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274 (1977).

"[C]ourts must approach prisoner claims of retaliation with skepticism and particular care." *See Dawes v. Walker*, 239 F.3d 489, 491 (2d Cir. 2001).  The Tenth Circuit has stated,

> Actions taken against a prisoner in retaliation for the prisoner's exercise of a constitutionally protected right are actionable under § 1983 even if the actions would otherwise have been proper. (citations omitted).  However, to succeed on such a claim, [Plaintiff] must prove that retaliation was the actual motivating factor behind [Defendants'] actions.  To defeat the defendant's motion for summary judgment, the plaintiff was required to produce some evidence of the defendant's retaliatory motive.

*Brown v. Sales*, 1997 WL 375347, *1 (10th Cir. 1997).

### 1.    Prison Transfers

Plaintiff argues that his frequent prison transfers were the result of retaliation by the Defendants because he kept filing grievances and complaints.  "While a prisoner enjoys no constitutional right to remain in a particular institution and generally is not entitled to due process protections prior to such a transfer, prison officials do not have the discretion to punish an inmate for exercise of his [F]irst [A]mendment rights by transferring him to a different institution." *Murphy v. Missouri Dept. of Correction*, 769, F.2d 502, 503 (8th Cir.1985).

The record does not indicate Plaintiff's location before he was transferred to AVCF in July 2004.  (Compl. at ¶ 26.)  While he was housed at AVCF, Plaintiff filed numerous grievances, however as noted herein the transfer activities of Capt. Gonzales, Lt. Steinbeck and Lt. Trujillo with respect to plaintiff's transfer from AVCF are outside the statute of limitations period.

The record reflects that Plaintiff was housed at AVCF from approximately July 2004 until April 12, 2005 (nine months), and then transferred to LCF where he stayed from April, 2005 until August, 2005 (approximately four months). The Complaint indicates that Lt. Trujillo sought to transfer Plaintiff to LCF where plaintiff could enroll in the T.C. program.[4] (Compl. ¶51). While at LCF, Plaintiff filed grievances against the warden for lack of jobs, problems receiving legal mail, and intimidation. (*Id*. at ¶ 62). Plaintiff asserts that he was only housed at LCF for four and a half months before he was transferred to another prison. (*Id*. at ¶ 63).

Plaintiff was then transferred to FLCF where he stayed from August 26, 2005 until November 10, 2005 (approximately two and a half months).[5]

The Defendants offer <u>no</u> explanation or justification for any of the transfers. The court therefore must consider the uncontested allegations in the Complaint as true. The circumstantial facts sufficiently establish that Plaintiff was repeatedly transferred from facility to facility during the period when he was filing multiple grievances against facility personnel. Given the contemporaneous nature of the grievances with the multiple transfers, this court finds that Plaintiff is entitled to an inference of retaliatory motive.

---

[4] Undefined term.

[5] The court notes that Plaintiff was later transferred to Sterling Correctional Facility ("SCF") for six weeks and then transferred to San Carlos Correctional Facility ("SCCF"). (*Id*. at ¶ 123.) However, Plaintiff appears to end his Claim Two allegations at the point where he was transferred out of FLCF on or about November 10, 2005.

Defendants have not argued that any of the individually named defendants are protected by the doctrine of qualified immunity and the court declines the Defendants invitation to make the argument for them. Further, although there is scant evidence of personal participation on the part of several of the named defendants, without more evidence, the court must conclude there are disputed issues of material fact remaining to be resolved with respect to Claim No. Two's retaliation allegations against Defendants Zalman, Butler, Estep, Michaels and Smith in their individual capacities and summary judgment is not appropriate at this time.

### 2. Interference With Legal Mail

Plaintiff alleges that on January 14, 2006, Defendant R. Gonzales returned Plaintiff's legal mail from the U.S. District Court, and this interfered with his communication with the courts. (*Id*. at ¶ 70.) This incident happened subsequent to Plaintiff's November 5, 2005 transfer out of FLCF, Defendant R. Gonzales' prison location. Because Plaintiff did not receive the letter, Plaintiff allegedly was not able to cure the infirmity and the complaint in that case was dismissed as a result. (*Id*. at ¶ 71). Plaintiff had, in the past, filed grievances against R. Gonzales in connection with mail and legal books. Plaintiff alleges that R. Gonzales' action of marking "Return to Sender" on the envelope from the court was done in retaliation for plaintiff filing previous grievances against him. (*Id.*)

The Due Process Clause of the Fourteenth Amendment guarantees state inmates the right to "adequate, effective, and meaningful" access to the courts. *Bounds v. Smith*, 430 U.S. 817, 822 (1977); *Green v. Johnson*, 977 F.2d 1383, 1389 (10th Cir. 1992). There are "affirmative obligations" imposed on the states to assure all inmates access to the courts and assistance in the

preparation and filing of legal papers. *LeVier v. Woodson*, 443 F.2d 360, 361 (10th Cir. 1971) (regulation of prison mail flow generally better left to prison official's discretion, with the exception of correspondence to appropriate persons about prison conditions and legality of conviction).

The Defendants do not offer a detailed account of the mail room incident. Assuming Plaintiff's version of the events as true, the allegation is that one piece of mail from a court was misdirected by returning it to the court after Plaintiff had been transferred to a new location instead of forwarding the mail to Plaintiff's new location. This court takes judicial notice of its own Rules which require litigants to keep the court apprised of their current address. D.C.COLO.LCivR 8.2(M). Therefore, it was not unreasonable for R. Gonzales to return the mail to the to the Court and allow the Court to evaluate whether dates should be re-set and send the mail to the new address.

Plaintiff has not shown that Defendant R. Gonzales' conduct was intentional nor even negligent, and certainly not that it was motivated by a retaliatory motive. *See e.g., Simkins v. Bruce*, 406 F.3d 1239, 1241 (10th Cir. 2005) (distinguishing between intentional and negligent conduct in right of access to legal mail claim); *Pink v. Lester*, 52 F.3d 73, 77 (4th Cir. 1995) (when access to courts is impeded by mere negligence, as when legal mail is inadvertently lost or misdirected, no constitutional violation occurs); *Richardson v. McDonnell*, 841 F.2d 120, 122 (5th Cir. 19988) (holding that unintentional loss of mail does not support access-to-courts claims and distinguishing situation involving intentional withholding of mail).

The court finds, therefore, that Plaintiff has failed to make the requisite showing the R. Gonzales wrongfully interfered with Plaintiff's legal mail and no showing that the returning of the court mail was done in retaliation for grievances filed by Plaintiff. Therefore the claim against R. Gonzales in Claim Two of the Complaint should be dismissed.

**B.    Claim Three: Disability Discrimination in Employment**

The Equal Protection Clause requires that no state deny any person within its jurisdiction the equal protection of the laws. U.S. Const. Amend XIV. Under the Equal Protection Clause, the government cannot treat someone differently than another similarly situated person without adequate justification for the difference in treatment. *See City of Cleburne v. Cleburne Living Center*, 473 U.S. 432, 439 (1985). "To state a claim under the Equal Protection Clause, a §1983 plaintiff must allege that a state actor intentionally discriminated against the plaintiff because of membership in a protected class." *Williams v. Bramer*, 180 F.3d, 699, 705 (5th Cir. 1999) (quotation and citation omitted.) Further, the Plaintiff must show that any differential treatment was done without a legitimate penalogical interest. *Hankins v. Miller*, 66 F.3d 338 (10th Cir. 1995).

Plaintiff alleges that while housed at LCF from April 2005 through August 2005 he had been assigned to IWLP, however, the program supervisor would not allow him to work because of his mental disability. (*Id*. at ¶ 107). Specifically, the Plaintiff alleges that he was fired and placed on unassigned status by Susan Butler, Plaintiff's CDOC Case Manager. (*Id*. at ¶ 109). Plaintiff also alleges that Defendant Butler refused to allow him to have a regular job because of his mental disability but then Plaintiff was sanctioned for not having a job. (*Id*. at ¶ 113).

Plaintiff also alleges that while he was housed at SCCF from August 2006 to February, 2007, he was not allowed adequate employment opportunities based on his mental disability in violation of the Fourteenth Amendment, the Americans with Disabilities Act ("ADA"),[6] and the Rehabilitation Act[7] (Compl. at 5). Plaintiff further alleges that Defendant Leyba failed to create jobs and programs for the SCCF inmates (*Id*. at ¶ 89), and that Defendant Ortiz failed to provide adequate jobs and programs at SCCF. (*Id*. at ¶ 104).

Interestingly, there is no information in the record about Plaintiff's mental disability, although the parties do not appear to be in disagreement that Plaintiff has a mental illness or disorder of some kind. The Americans with Disability Act of 1990 and the Rehabilitation Act are applicable to prisoners. *See Pennsylvania Dep.'t of Corrections v. Yeskey*, 524 U.S. 206, 210 (1998).

Prisoners do not, however, have a constitutional right to employment absent a regulation to the contrary. *Templeman v. Gunter*, 16 F.3d 367, 370 (10th Cir.1994); *Williams v. Meese*, 926 F.2d 994, 998 (10th Cir. 1991); *Ingram v. Papalia*, 804 F.2d 595, 596-97 (10th Cir. 1986). Further, prisoners may be removed from a prison job without any process. *Id*.; *See Penrod v. Zavaras*, 94 F.3d 1399, 1407 (10th Cir. 1996) ("denial of employment opportunities to an inmate

---

[6] 42 U.S.C. § 12101 et seq. states in relevant part: "No otherwise qualified individual with a disability in the United States . . . shall, solely by reason or her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance."
[7] 29 U.S.C. § 794.

does not impose an atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life.").

As to SCCF, Plaintiff complains that the entire facility is lacking in reasonable employment programs for mentally ill inmates. However, the privileges, programs and other accouterments of one prison need not be extended to all within the same system. *Bell v. Wolfish*, 441 U.S. 520, 554 (1979). Prison administrators have broad discretion to manage penal institutions and make the decisions which need to be made for the system as a whole and the security and successful operation of each individual facility. *See Hewitt v. Helms*, 459 U.S. 460, 467 (1983) (*overruled in part on other grounds* by, *Sandin v. Conner*, 515 U.S. 472 (1995). The plaintiff has failed to state a claim that he was treated differently from other inmates housed at SCCF during the relevant time period and these claims, therefore, should be dismissed. This court recommends that the claims in Count Three involving Defendants Leyba, Thompson and Ortiz be dismissed.

As to claims involving LCF, a prison facility not exclusively devoted to the housing of medically challenged individuals, Plaintiff's record of employment shows that Plaintiff held employment at all the facilities where he was transferred, including AVCF, LCF, FLCF, Kit Carson, SCF, and SCCF. (Def. Mot., Ex. A, Attachment 2, Offender Programs Record.) In her Affidavit, Defendant Butler explains that Plaintiff was assigned to IWLP on April 22, 2005, which is common practice for all new arrival offenders. (Mot., Ex. B., Aff. of Susan Butler). According to Butler, Plaintiff was given an opportunity to work in Food Service but was released

because he was "medically unable to participate in the position." (*Id.*)  He was thereafter returned to work at IWLP.  (*Id.*)

Plaintiff again makes no showing that he was treated differently from a similarly situated person at LCF.  The plaintiff has failed to state a claim that he was treated differently from other inmates housed at LCF during the relevant time period and these claims, therefore, should be dismissed.  This court recommends that the claims in Count Three involving Defendant Butler be dismissed.

**C.** **Claim Four: Violation of First and Fourteenth Amendment for Tampering with Inmate Incoming Mail.**

Plaintiff asserts that on June 15, 2006, he received a letter from a friend which had the return address sticker torn off and discarded by Defendants Little and Van Meter.  (*Id*. at ¶ 116).  On June 28, 2006, Plaintiff received a card from the same friend, again with the return address removed.  (*Id*. at ¶ 117).  As a result, Plaintiff claims he no longer can contact this friend.  (*Id*. at ¶ 11).  Plaintiff contends that the removal of the return address from the mail envelope was in violation of CDOC mail policy requiring that inmates be given written notice of  rejected mail and an opportunity to send the rejected mail home. (*Id*. at ¶ 118).  Plaintiff further asserts he was not given an opportunity to challenge the "rejected mail." (*Id*. at ¶ 119).  Plaintiff claims by their actions, "the defendants violated the plaintiff's 1st amendment and 14th amendment rights of the U.S. Constitution.  (Compl. at ¶ 116.)

It is undisputed that the prison mail room removed the return address sticker on the incoming mail and did not alter the mail content.  The policy speaking to the prison's discretion

to handle stickers and stamps on outside mail is attached as Exhibit C to the Motion for Summary Judgment.  ( Mot., Attach. C).

Court's addressing similar issues have found the a prison's regulation of incoming mail containing labels and stickers is a content neutral activity which does not violate the inmates' protected rights.  *See Smith v. Maschner*, 899 F.2d 940, 943 (10th Cir. 1990); *Ingraham v. Wright*, 430 U.S. 651, 674 (1977).  Plaintiff does not provide evidence of a prison policy of removing stickers from the mail for a punitive purpose, other than his allegations. His factual allegations in Claim Four, taken as true, simply do not rise to the level of a constitutional violation.  *Bell v. Wolfish,* 441 U.S. 520, 539 n.21 (1979).

Therefore, this court finds that the allegations in Claim Four against Defendants Little, Van Meter and Bullard fail to state a claim upon which relief can be granted and dismissal is appropriate.

### VI.    Eighth Amendment Violation

In Claim Five, Plaintiff argues that the delay in his Hepatitis-C treatment pending participation in specified drug and alcohol treatment was in violation of the Eighth Amendment. (*Id*. at ¶ 137).  The Plaintiff alleges he was informed that he had Hepatitis-C in 2001, (*id*. at ¶138), and has been qualified for treatment since 2002. (*Id*. at ¶ 142).  Plaintiff asserts he was not informed that he qualified for treatment for Hepatitis-C treatment until late 2004.[8] (*Id*. at ¶ 139). Plaintiff claims that although he had already taken the required drug and alcohol classes that

---

[8] Any claims which may have been alleged for failure to notify and treat Plaintiff (See, i.e. Compl. ¶ 142) are barred by the statute of limitations as set forth, *infra*.

were part of the treatment program, he agreed to take the classes again in order to get treatment for the Hepatitis-C. (*Id*. at ¶ 145). However, once he was transferred to SCF in June 2006, Plaintiff learned that he no longer qualified to obtain treatment under the new criteria. (*Id*. at ¶¶ 148-149) Plaintiff claims he never received treatment. Plaintiff alleges that the implementation of the new criteria constituted undue delay. (*Id*. at ¶ 151).

Plaintiff states that the delay in treatment has caused additional serious harm to his liver disease. (Compl. at ¶ 150-151). "The plaintiff has a serious liver disease that is being harmed every day due to the lack of treatment. The plaintiff is still not been placed in a drug and alcohol class. The plaintiff will continue to suffer serious irreperable [sic] harm without treatment." (*Id*. at ¶ 156). The Defendants do not appear to contest Plaintiff's claim that he suffers from Hepatitis-C, but state in a conclusory fashion that the delay in treatment did not cause Plaintiff any injury. (Mot. at 14.)

Plaintiff claims that Defendant Ortiz, as Director of CDOC, approved the criteria for Hepatitis-C treatment and knew that there were not enough drug and alcohol classes to meet the needs of inmates. (*Id.* at ¶ 152.) Plaintiff further alleges that Grievance Officer Thomas Bullard, by failing to investigate Plaintiff's grievances regarding the delay in treatment for Hepatitis-C, was deliberately indifferent to Plaintiff's serious medical needs. (*Id.* at ¶ 150-51.)

The Eighth Amendment prohibits the infliction of "cruel and unusual punishments." U.S. Const. amend. VIII. "[T]he treatment a prisoner receives in prison and the conditions under which he is confined are subject to scrutiny under the Eighth Amendment." *Farmer v. Brennan*, 511 U.S. 825, 832 (1994) (citation omitted). Conditions of confinement which inflict pain

unnecessarily and wantonly may constitute cruel and unusual punishment under the Eighth Amendment. *Whitley v. Albers*, 475 U.S. 312, 319 (1986).

An Eighth Amendment claim includes both an objective component, e.g., whether the medical need of the prisoner is "serious," *Hudson v. McMillian*, 503 U.S. 1, 9 (1992), and a subjective component, e.g., whether the officials acted with a sufficiently culpable state of mind. *Wilson v. Seiter*, 501 U.S. 294, 298 (1991). In order to assert an Eighth Amendment claim that prison officials were deliberately indifferent to his medical needs, a plaintiff must demonstrate: (1) he suffered objectively serious medical needs, and; (2) the prison officials actually knew of and deliberately disregarded those needs. *See Ramos v. Lamm*, 639 F.2d 559, 575 (10th Cir. 1980) (two-pronged standard "requires deliberate indifference on the part of prison officials and it requires the prisoner's medical needs to be serious"); *Dulany v. Carnahan*, 132 F.3d 1234, 1239 (8th Cir. 1997) (same).

The subjective component follows from the principle that "only the unnecessary and wanton infliction of pain implicates the Eighth Amendment." *Farmer*, 511 U.S. at 834. An inmate's complaint of inadequate medical care amounts to an Eighth Amendment claim if the inmate alleges "acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." *Estelle v. Gamble*, 429 U.S. 97, 106 (1976). Deliberate indifference requires a higher degree of fault than negligence or even gross negligence. *Berry v. Muskogee*, 900 F.2d 1489, 1495–96 (10th Cir. 1990) (citation omitted). An official acts with deliberate

indifference if his or her conduct "disregards a known or obvious risk that is very likely to result in the violation of a prisoner's constitutional rights." *Berry*, 900 F.2d at 1496.

Accepting the factual rendition as set forth by the Plaintiff in the Complaint as true, the court must determine if the facts support a claim that Defendants violated the Eighth Amendment in that, 1) Plaintiff had a serious medical condition, and, 2) that the officials acted with a sufficiently culpable state of mind by not responding and treating the Plaintiff for his Hepatitis-C between 2001 and June, 2006.

The Defendants cavalierly dismiss the Plaintiff's claim that he has suffered serious liver damage and assert that Plaintiff has not made a claim of objective harm. (*Id.*) However, this court finds the Plaintiff did make such a claim, albeit without any evidentiary support attached. However, to state a claim, a plaintiff's complaint must "show[ ] that the pleader is entitled to relief." Fed. R. Civ. P. (8)(a)(2). Specific facts are not necessary; the statement need only "'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atlantic Corp.*, 550 U.S. 544,127 S. Ct. at 1964 (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). The plaintiff must allege enough factual matter, taken as true, to make his "claim to relief . . . plausible on its face." 550 U.S. 544, —, 127 S. Ct. 1955, 1974 (2007); *Van Zanen v. Qwest Wireless, L.L.C.*, 522 F.3d 1127, 1129–30 (10th Cir. 2008). The Plaintiff suffers from a known and apparently undisputed medical condition and has alleged serious medical consequences from delay in treatment. This court concludes that Plaintiff has set forth an objective basis of harm sufficient to trigger an analysis of the subjective prong of an Eighth Amendment violation analysis.

A "sufficiently culpable state of mind," as required for stating a deliberate indifference claim under the Eighth Amendment, means "defendant(s) knew [plaintiff] faced a substantial risk of harm and disregarded that risk, 'by failing to take reasonable measures to abate it.'" *Hunt v. Uphoff,* 199 F.3d 1220, 1224 (10th Cir. 1999) (citations and quotations omitted).

"[A] prison official cannot be found liable under the Eighth Amendment ... unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer*, 511 U.S. at 837. However, "a prison official's knowledge of a substantial risk of harm may be inferred if the risk was obvious." *Id*. at 843-43.

The only two plaintiffs charged in Claim Five are Bullard, identified as a Step III Grievance Officer for CDOC and Joe Ortiz, the then Director of CDOC.[9] Neither Defendant is claimed to be a medical professional. Plaintiff's claim against Bullard is,

> Thomas Bullard knew the plaintiff needed treatment for his liver disease, knew he qualified, knew he needed take the drug and alcohol class to receive treatment, knew he was being denied access to classes that were prerequesits [sic] to treatment, knew he had been trieng [sic] to get into a class for over a year and refused to take any action in the plaintiff's behalf.

(*Id.* at ¶ 151). Apparently, the Plaintiff is alleging that instead of denying a grievance filed by the Plaintiff, Bullard should have taken the matter up with Ortiz directly.

---

[9]As previously noted, the CDOC Medical Director and the CDOC Mental Health Director, to the extent such positions and people existed, have not been served in this case.

Plaintiff claims that Defendant Ortiz, who approved the policy criteria for an inmate to receive treatment for Hepatitis-C, failed to establish an effective treatment policy. (*Id*. ¶ 155). He argues that Defendant Ortiz knew there were not enough drug and alcohol classes ongoing to meet inmate demand. (*Id*. ¶ 152). Plaintiff contends that Defendant Ortiz was deliberately indifferent to his serious medical needs because he did not monitor or supervise the medical and mental health director, and thus caused additional harm to Plaintiff's liver. (*Id*. ¶ 153). Although the Defendants failed to argue the point, neither Ortiz nor Bullard had any personal participation in Plaintiff's treatment or lack of treatment in connection with his Hepatitis-C. Although a supervisor can be liable under section 1983 for his failure to supervise, *Meade v. Grubbs*, 841 F.2d 1512, 1527 (10th Cir. 1988), there is simply no evidence or facts in the complaint showing that plaintiff would be seriously harmed by delay in treatment until he finished certain unavailable drug and alcohol counseling. On the other hand, the Defendants have not put forth any facts contradicting the Plaintiff's conclusory claim that the lack of treatment – when it appears uncontested that he qualifies for treatment – is not a risk of harm that is obvious on its face. *Farmer*, 511 U.S. at 837.

Therefore, this court finds that there remain material facts in dispute which preclude summary judgment on Claim Five of the Complaint. The court recommends that the claim be allowed to go forward against Defendants Ortiz and Bullard in their individual capacities.

WHEREFORE, for the foregoing reasons, the court respectfully

**RECOMMENDS** that Defendant's "Motion for Summary Judgment" (Doc. No. 56, filed on May 30, 2008) be **GRANTED** in part and **DENIED** in part, as follows:

1. GRANT and DISMISS all claims against Defendants Joe Ortiz and William Zalman in their official capacities;

2. GRANT and DISMISS Claim One including all claims against Defendant Warden of DRDC in 1998, William Bokros, and Defendant Plaintiff's CaseManager in 1998 at DRDC, Larry Turner in all capacities.

3. GRANT and DISMISS the retaliation claims contained in Claim Two against Defendants Capt. Gonzales, Christine Moschetti, Lt. Steinbeck, C/O Rael, Lt. Trujillo and C/O Ricky Gonzales in all capacities.

4. DENY the Motion as to the retaliation claims contained in Claim Two as to Capt. Butler, Capt. Michaels, Ass. Warden Cheryl Smith, William Zalman and Warden Estep in their individual capacities.

5. GRANT and DISMISS all claims contained in Claim Three, including all claims against Warden Layba (sic, Warden Ron Leyba), SCCF Program Manager (Kim Thompson), Joe Ortiz, Capt. Butler and unserved Defendant Limon's IWLP Supervisor in any capacity.

6. GRANT and DISMISS all claims contained in Claim Four, including all claims against Defendants Eva Little, Lt. Van Meter, and Thomas Bullard in any capacities.

7. DENY the Motion with respect to Claim No. Five as to Defendants Thomas Bullard and Joe Ortiz in their individual capacities.

This Court further **RECOMMENDS** that claims against Capt. Butler, Capt. Michaels, Ass. Warden Cheryl Smith, William Zalman and Warden Estep, each in their individual capacity, for retaliation as outlined in Claim Two _and_ claims against Joe Ortiz and Thomas Bullard, each in their individual capacity, for Eighth Amendment violations as outlined in Claim Five be set for further proceedings.

## ADVISEMENT TO THE PARTIES

Within ten days after service of a copy of the Recommendation, any party may serve and file written objections to the Magistrate Judge's proposed findings and recommendations with the Clerk of the United States District Court for the District of Colorado. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *In re Griego*, 64 F.3d 580, 583 (10th Cir. 1995). A general objection that does not put the District Court on notice of the basis for the objection will not preserve the objection for *de novo* review. "[A] party's objections to the magistrate judge's report and recommendation must be both timely and specific to preserve an issue for de novo review by the district court or for appellate review." *United States v. One Parcel of Real Property Known As 2121 East 30th Street, Tulsa, Oklahoma*, 73 F.3d 1057, 1060 (10th Cir. 1996). Failure to make timely objections may bar *de novo* review by the District Judge of the Magistrate Judge's proposed findings and recommendations and will result in a waiver of the right to appeal from a judgment of the district court based on the proposed findings and recommendations of the magistrate judge. *See Vega v. Suthers*, 195 F.3d 573, 579-80 (10th Cir. 1999) (District Court's decision to review a Magistrate Judge's recommendation *de novo* despite the lack of an objection does not preclude application of the "firm waiver rule"); *One Parcel of Real Property*, 73 F.3d at 1059-60 (a party's objections to the Magistrate Judge's report and recommendation must be both timely and specific to preserve an issue for *de novo* review by the District Court or for appellate review); *International Surplus Lines Insurance Co. v. Wyoming Coal Refining Systems, Inc.*, 52 F.3d 901, 904 (10th Cir. 1995) (by failing to object to certain portions of the Magistrate Judge's order, cross-claimant had waived its right to appeal those portions of the

ruling);  *Ayala v. United States*, 980 F.2d 1342, 1352 (10th Cir. 1992) (by their failure to file objections, plaintiffs waived their right to appeal the Magistrate Judge's ruling).  *But see, Morales-Fernandez v. INS*, 418 F.3d 1116, 1122 (10th Cir. 2005) (firm waiver rule does not apply when the interests of justice require review).

Dated this 3d day of March, 2009.

**BY THE COURT:**

Kathleen M. Tafoya
United States Magistrate Judge