IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 07–cv–00663–LTB–KMT

MICHAEL WHITINGTON,

      Plaintiff,

v.

LT. STEINBECK,
CAPT. BUTTLER and Limon's IWLP Supervisor,
WARDEN ESTEP,
CAPT. MICHAELS,
THOMAS BULLARD
JOE ORTIZ, in his individual capacity, and
CHERYL SMITH,

      Defendants.

---

## RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE

**Kathleen M. Tafoya**
**United States Magistrate Judge**

      This case involves claims that Defendants violated Plaintiff's rights under the First and Eighth Amendments.  This matter is before the court on "Defendants' Second Motion for Summary Judgment" ([Doc. No. 112] [filed August 14, 2009] [hereinafter "Mot."]) and Plaintiff's "Motion for Temporary Restraining Order and Preliminary Injunction Pursuant to 65(a) & (b) [sic] Fed. R. Civ. P. and Reply to Defendants Response to Plaintiff's Letters in Documents 107 and 110" ([Doc. No. 120] [filed September 23, 2009] [hereinafter "Mot. for PI"]).  Plaintiff filed his Response to the Motion for Summary Judgment on October 6, 2009.

([Doc. No. 122] [hereinafter "Resp."].)  Defendants filed their Reply in support of the Motion for

Summary Judgment on October 19, 2009.  ([Doc. No. 125] [hereinafter "Reply"].)  Defendants

filed their Response to Plaintiff's Motion for Preliminary Injunction on October 9, 2009.  ([Doc.

No. 124] [hereinafter "Resp. to Mot for PI"].)  Plaintiff filed his Reply in support of the Motion

for Preliminary Injunction on October 29, 2009.  (Doc. No. 128.)  Jurisdiction is premised upon

42 U.S.C. § 1983 (2007).  These motions are ripe for review and recommendation.

## PROCEDURAL HISTORY

Plaintiff filed the Second Amended Prisoner Complaint on July 2, 2007 asserting five

Section 1983 civil rights claims against a total of twenty-two defendants.  ([Doc. No. 14]

[hereinafter "Compl."].)  On May 30, 2008, Defendants filed their first Motion for Summary

Judgment.  (Doc. No. 56.)  On March 3, 2009, this court recommended the first Motion for

Summary Judgment be granted in part and that all but seven defendants and two claims be

dismissed.  ([Doc. No. 72] [hereinafter "Rec."].)  On April 14, 2009, the District Court accepted

and adopted this court's Recommendation in its entirety.  (Doc. No. 78.)  Accordingly, the only

claims remaining in this case are: Plaintiff's Claim Two for retaliation in violation of the First

Amendment against Defendants William Zalman ("Zalman"), Captain Susan Butler ("Butler"),

Warden Al Estep ("Estep"), Captain Nancy Micheals ("Michaels"), and Assistant Warden

Cheryl Smith ("Smith"); and Plaintiff's Claim Five for deliberate indifference in violation of the

Eighth Amendment against Defendants Joe Ortiz ("Ortiz"), and Thomas Bullard ("Bullard").[1]

All remaining claims are against the defendants in their individual capacities only.  (Rec. at 29.)

## STATEMENT OF THE CASE

The following facts are taken from Plaintiff's Complaint and the parties' submissions with respect to this Recommendation.  Plaintiff is an inmate in the custody of the Colorado Department of Corrections ("CDOC"), currently housed at the Sterling Correctional Facility ("SCF") in Sterling, Colorado.  (Compl. at 3.)

During the time period relevant to this litigation, Defendant Zalman was the CDOC Director of Offender Services (Mot., Ex. A [hereinafter "Zalman Aff."], ¶4); Defendant Butler was a Case Manager II assigned to LCF (*id*., Ex. B [hereinafter "Butler Aff."], ¶ 2); Defendant Estep was the Warden at LCF and Fort Lyon Correctional Facility ("FLCF") (*id*., Ex. C [hereinafter "Estep Aff."], ¶ 2); Defendant Michaels was a Case Manager III at FLCF (*id*., Ex. D [hereinafter "Michaels Aff."], ¶ 2); and Defendant Smith served as the Associate Warden at FLCF (*id*., Ex. E [hereinafter "Smith Aff."], ¶ 2).

Plaintiff was housed at Limon Correctional Facility ("LCF") from April to August 2005. (*Id*., ¶ 62.)  In Claim Two, Plaintiff alleges he filed grievances for assault, officer misconduct, lack of jobs, interference with legal mail, and intimidation by the warden while housed at LCF. (*Id*., ¶¶ 64–65).  On August 26, 2005, Plaintiff was transferred to FLCF.  (*Id*., ¶ 67.)  Plaintiff alleges that Defendant Butler had him transferred to a different prison in retaliation for the

---

[1] As of this date, Defendants CDOC Medical Director and CDOC Mental Health Director have not yet been served.

numerous grievances Plaintiff had filed while at LCF (*id.*, ¶¶ 64–65), and that Defendant Zalman

conspired with Defendant Butler in the endeavor (*id.*, ¶ 82).

Plaintiff was housed at FLCF from August 26, 2005 to November 10, 2005.  (*Id.*, ¶ 67.)

During this time, Plaintiff filed a number of grievances against prison officials and the warden

regarding prison conditions.  (*Id.*)  Plaintiff states he also assisted other inmates with their

grievances.  (*Id.*, ¶ 76.)  On November 10, 2005, Plaintiff was transferred from FLCF to another

prison facility.  (*Id.*, ¶ 67.)  Plaintiff claims Defendants Estep, Michaels, and Smith had Plaintiff

transferred out of FLCF in retaliation for filing grievances and assisting other inmates with their

grievances.  (*Id.*, ¶ 77–78.)  Plaintiff alleges Defendant Zalman conspired with Defendants Estep,

Michaels, Smith, and Butler to have Plaintiff transferred.  (*Id.*, ¶ 80–81.)  Plaintiff claims both

the August 2005 transfer to FLCF and the November 2005 transfer from FLCF violated his First

Amendment rights.[2]

At the time of the incidents alleged in Claim Five, Defendant Bullard worked part-time

assisting the CDOC Step 3 Grievance Officer by answering Step 3 grievances filed by offenders

in the CDOC (Mot., Ex. F [hereinafter "Bullard Aff."], ¶ 3), and Defendant Ortiz served as

Executive Director of the CDOC (*id.*, Ex. G [hereinafter "Ortiz Aff."], ¶¶ 2).

In Claim Five, Plaintiff asserts he was subjected to cruel and unusual punishment in

violation of the Eighth Amendment when his requests for medical treatment for Hepatitis C were

---

[2] In the March 3, 2009 Recommendation, this court found, and the District Court agreed,
that any claims based on events occurring prior to April 3, 2005 were barred by the statute of
limitations applicable to Section 1983 suits.  (Rec. at 11.).  Therefore, only Plaintiff's transfer
from LCF to FLCF on August 26, 2005, and from FLCF on November 10, 2005 are presently at
issue.

denied and delayed.  (*Id.*, ¶ 146.)  Plaintiff states Defendant Bullard denied his prisoner

grievance regarding lack of access to Hepatitis C treatment.  (*Id.*, ¶ 150.)  Plaintiff claims

Defendant Bullard's denial of his grievance constitutes deliberate indifference to Plaintiff's

medical needs in violation of the Eighth Amendment.  (*Id.*, ¶ 151.)  Plaintiff alleges Defendant

Ortiz was deliberately indifferent to Plaintiff's medical needs in violation of the Eighth

Amendment by approving an inmate treatment protocol which resulted in Plaintiff's delayed

Hepatitis C treatment.  (*Id.*, ¶¶ 152–53.)

Defendants move to dismiss on the following grounds: 1) Plaintiff has failed to allege

any defendant's personal participation in any wrong doing; 2) Plaintiff's claims fail on their

merits; and 3) Defendants are entitled to qualified immunity.

## LEGAL STANDARD

### *1.*     **Pro Se** *Plaintiff*

Plaintiff is proceeding *pro se*.  The court, therefore, "review[s] his pleadings and other

papers liberally and hold[s] them to a less stringent standard than those drafted by attorneys."

*Trackwell v. United States*, 472 F.3d 1242, 1243 (10th Cir. 2007) (citations omitted).  *See also*

*Haines v. Kerner*, 404 U.S. 519, 520–21 (1972) (holding allegations of a *pro se* complaint "to

less stringent standards than formal pleadings drafted by lawyers").  However, a *pro se* litigant's

"conclusory allegations without supporting factual averments are insufficient to state a claim

upon which relief can be based."  *Hall v. Bellmon,* 935 F.2d 1106, 1110 (10th Cir. 1991).  A

court may not assume that a plaintiff can prove facts that have not been alleged, or that a

defendant has violated laws in ways that a plaintiff has not alleged.  *Associated Gen. Contractors*

*of Cal., Inc. v. Cal. State Council of Carpenters*, 459 U.S. 519, 526 (1983).  *See also Whitney v.*

*New Mexico*, 113 F.3d 1170, 1173–74 (10th Cir. 1997) (court may not "supply additional factual

allegations to round out a plaintiff's complaint"); *Drake v. City of Fort Collins*, 927 F.2d 1156,

1159 (10th Cir. 1991) (the court may not "construct arguments or theories for the plaintiff in the

absence of any discussion of those issues").  The plaintiff's *pro se* status does not entitle him to

application of different rules.  *See Montoya v. Chao*, 296 F.3d 952, 957 (10th Cir. 2002).

**2.      *Fed. R. Civ. P. 56(c) – Summary Judgment***

Pursuant to Rule 56(c) of the Federal Rules of Civil Procedure, the court may grant

summary judgment where "the pleadings, depositions, answers to interrogatories, and admissions

on file, together with the affidavits, if any, show that there is no genuine issue as to any material

fact and that the moving party is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c)

(2006); *see Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248–50 (1986); *Concrete Works, Inc.*

*v. City & County of Denver*, 36 F.3d 1513, 1517 (10th Cir. 1994).  The moving party bears the

initial burden of showing an absence of evidence to support the nonmoving party's case.  *Celotex*

*Corp. v. Catrett*, 477 U.S. 317, 325 (1986).  "Once the moving party meets this burden, the

burden shifts to the nonmoving party to demonstrate a genuine issue for trial on a material

matter."  *Concrete Works*, 36 F.3d at 1518 (citing *Celotex*, 477 U.S. at 325).  The nonmoving

party may not rest solely on the allegations in the pleadings, but must instead designate "specific

facts showing that there is a genuine issue for trial."  *Celotex*, 477 U.S. at 324; *see* Fed. R. Civ.

P. 56(e) (2006).  A fact in dispute is "material" if it might affect the outcome of the suit under

the governing law; the dispute is "genuine" if the evidence is such that it might lead a reasonable

jury to return a verdict for the nonmoving party. *Allen v. Muskogee*, 119 F.3d 837, 839 (10th Cir. 1997) (citing *Anderson*, 477 U.S. at 248).

The court may consider only admissible evidence when ruling on a summary judgment motion. *See World of Sleep, Inc. v. La-Z-Boy Chair Co.*, 756 F.2d 1467, 1474 (10th Cir. 1985). The factual record and reasonable inferences therefrom are viewed in the light most favorable to the party opposing summary judgment. *Byers v. City of Albuquerque*, 150 F.3d 1271, 1274 (10th Cir. 1998) (citing *Concrete Works*, 36 F.3d at 1517).

## ANALYSIS

### I.      *Claim Two – First Amendment Retaliation*

Plaintiff claims Defendants Zalman, Butler, Estep, Michaels, and Smith violated his constitutional rights by transferring him to four different prisons within an eight-month period in retaliation for filing grievances and administrative complaints against prison officials.  (Compl. at 12–14.)  In particular, Plaintiff claims the two transfers specifically referenced herein were retaliatory.  Defendants contend Plaintiff's claims for retaliation fail because Plaintiff has failed to set forth facts showing Defendants Zalman, Butler, Estep, Michaels, and Smith were involved in the decisions to transfer Plaintiff in August or November 2005.  (Mot. at 9–13.)

"To establish a First Amendment retaliation claim, a plaintiff must show that (1) he was engaged in constitutionally protected activity, (2) the government's actions caused him injury that would chill a person of ordinary firmness from continuing to engage in that activity, and (3) the government's actions were substantially motivated as a response to his constitutionally protected conduct." *Nielander v. Bd. of County Com'rs of Republic, Kan.*, 582 F.3d 1155, 1165

(10th Cir. 2009) (citing *Worrell v. Henry*, 219 F.3d 1197, 1212 (10th Cir. 2000)).  "To establish a claim for retaliation, a plaintiff must show that 'but for the retaliatory motive, the incidents to which he refers . . . would not have taken place.' "  *Dawson v. Johnson*, 266 F. App'x 713, 716 (10th Cir. 2008) (citing *Smith v. Maschner*, 899 F.2d 940, 949–50 (10th Cir. 1990)).  A plaintiff must allege "specific facts showing retaliation because of the exercise of the prisoner's constitutional rights."  *Peterson v. Shanks*, 149 F.3d 1140, 1144 (10th Cir. 1998) (internal quotations and citation omitted).  "The inmate must allege more than his personal belief that he is the victim of retaliation."  *Boyd v. T'Kach,* 2008 WL 784398 at *5 (D. Colo. 2008) (quoting *Jones v. Greninger*, 188 F.3d 322, 325 (5th Cir. 1999)).

Defendants do not contest that Plaintiff's filing of prison grievances constitutes protected conduct.  *See Nordgren v. Milliken*, 762 F.2d 851, 853 (10th Cir. 1985).  However, assisting other inmates with filing grievances is not protected activity.  *Maschner*, 899 F.2d at 950 ("[Prisoner-plaintiff] does not have a protected interest in providing legal representation to other inmates."); *see also Northington v. Zavaras*, 229 F.3d 1164 (10th Cir. 2000).  Therefore, such conduct cannot serve as the basis of Plaintiff's retaliation claim as to the November 2005 transfer.  *See Nielander*, 582 F.3d at 1165 ("To establish a First Amendment retaliation claim, a plaintiff must show that (1) he was engaged in constitutionally protected activity").

### 1.    *Defendants Zalman, Butler, Michaels, and Smith*

Personal participation is an essential allegation in a Section 1983 civil rights action. *Bennett v. Passic*, 545 F.2d 1260, 1262–63 (10th Cir. 1976).  To establish personal liability, a plaintiff must show that the official caused the deprivation of a federal right.  *Kentucky v.*

*Graham*, 473 U.S. 159, 166 (1985).  There must be an affirmative link between the alleged

constitutional violation and each defendant's participation, control or direction, or failure to

supervise.  *See Butler v. City of Norman*, 992 F.2d 1053, 1055 (10th Cir. 1993).  "Because

vicarious liability is inapplicable to . . . § 1983 suits, a plaintiff must plead that each

Government-official defendant, through the official's own individual actions, has violated the

Constitution."  *Ashcroft v. Iqbal*, ___ U.S. ___, 129 S. Ct. 1937, 1948 (2009).

"[T]o state a claim in federal court, a complaint must explain what each defendant did to

him or her; when the defendant did it; how the defendant's action harmed him or her, and what

specific legal right the plaintiff believes the defendant violated."  *Nasious v. Two Unknown*

*B.I.C.E. Agents*, 492 F.3d 1158, 1163 (10th Cir. 2007).  To properly state a claim for retaliation

against Defendants Zalman, Butler, Estep, Michaels, and Smith, Plaintiff must produce some

evidence or specific factual allegations showing each of these defendants were personally

involved in Plaintiff's transfers in August and November 2005.  *See Muskogee*, 119 F.3d at 839.

Plaintiff sets forth no facts—as opposed to conclusions—in his Complaint to support his

claim that Defendant Zalman personally participated in Plaintiff's transfers.  Defendant

Zalman's affidavit states he had no knowledge of or personal involvement in the decisions to

transfer or the actual transfers of Plaintiff "from LCF on August 26, 2005 or from FLCF on

November 10, 2005."  (Zalman Aff., ¶¶ 5, 8.)  Defendant Zalman further states he did not have

any communication with the individuals involved in either transfer.  (*Id.*, ¶ 7.)  In his Response,

Plaintiff claims "Defendant Zalman was the Director of Offender Services and was responsible

for approving all inmate transfers."  (Resp. at 2.)  Plaintiff claims CDOC policy required that

Defendant Zalman initiate and approve of Plaintiff's transfers. (*Id*. at 4.) However, the documents Plaintiff claims support his assertion do not bear Defendant Zalman's name or signature or any other indication that he either initiated or personally approved Plaintiffs' transfers. (*Id*., Ex. 6–8.) Therefore, Plaintiff has failed to bring forth any facts which contradict Defendant Zalman's testimony or preserve a disputed issue.

Plaintiff alleges Defendant Butler, in her role as Case Manager at LCF, had the plaintiff transferred from LCF to FLCF in retaliation for filing grievances. (Compl., ¶ 64; Mot., Ex. B [hereinafter "Butler Aff."], ¶ 2.) Plaintiff sets forth no facts in support of the allegation in the Complaint. (Compl., ¶¶ 62–86.) In his Response, Plaintiff claims Defendant Butler was "responsible for inmate transfers and approve[d] the transfers, and submitt[ed] them to the Warden for his approval." (Resp. at 2.)

Defendant Butler states in her affidavit that she did not have any involvement in Plaintiff's prison transfer "from LCF to FLCF on August 26, 2005" (Butler Aff., ¶¶ 5, 7).[3] Defendant Butler further states she was not Plaintiff's case manager in August 2005 and had no knowledge of his transfer from LCF to FLCF on August 26, 2005. (*Id*., ¶ 5.) Defendant Butler also avers she did not have any communications with the individuals involved in Plaintiff's transfer from LCF to FLCF. (*Id*., ¶ 6.)

Plaintiff points to an Inmate Reclassification Custody Rating form (Resp., Ex. 1 at 8) bearing Defendant Butler's signature as evidence that, contrary to her sworn statement, she was

---

[3] Defendant Butler was employed at LCF in August of 2005 and there is no allegation in either the Complaint or Response that she was in any way involved in Plaintiff's subsequent transfer from FLCF on November 1, 2005.

involved in the August 2005 transfer.  (*Id.* at 3.)  Examination of Exhibit 1 shows that on August

26, 2005 Defendant Butler signed a reclassification of Plaintiff at a different custody level, not a

transfer document.  (*Id.*)  While Plaintiff claims the Inmate Reclassification Custody Rating form

"introduced [his] transfer" (*id.* at 3), the court finds such an inference untenable in light of the

DOC Executive Assignment Order dated August 24, 2005 (Mot., Ex. C [hereinafter "Estep

Aff."], at 3) which authorized Plaintiff's facility transfer two days prior.[4]  (Resp., Ex. 1 at 8

[Inmate Reclassification Custody Rating].)  Furthermore, to the extent Plaintiff seeks to hold

Defendant Butler liable by virtue of her supervisory position as "the Case Manager Supervisor at

LCF," such vicarious liability is inapplicable to Section 1983 suits as previously noted.  *Iqbal*,

129 S. Ct. at 1948.  Therefore, Plaintiff has failed to bring forth any evidence contradicting

Defendant Butler's testimony that she had no involvement in Plaintiff's August 2005 transfer.

     Plaintiff's Complaint does not mention Defendant Smith by name in Claim Two.

(Compl. at 13–14.)  Instead, Plaintiff claims "the Assistant Warden conspired [with Defendants

Estep and Michaels] and had the plaintiff transferred in retaliation for his complaints and

grievances."  (*Id.*, ¶ 77.)  Assuming this allegation is directed against Defendant Smith, it is

wholly conclusory and lacks specific factual support.  Defendant Smith states in her affidavit

that she had no involvement in the decision to transfer Plaintiff or his actual transfer from FLCF

---

    [4] Defendant Butler's affidavit states she "did not have any knowledge of Mr. Whitington's transfer from LCF to FLCF on August 26, 2005."  (Butler Aff., ¶ 5.)  The Inmate Reclassification Custody Rating form (Resp., Ex. 5) clearly calls this assertion into question. This factual dispute, however, is not material because even if Defendant Butler had knowledge of Plaintiff's transfer, Plaintiff has not produced any evidence showing that Defendant Butler was personally involved in his transfer.

on November 10, 2005.[5]  (Mot., Ex. D [hereinafter "Michaels Aff."], ¶ 8.)  Defendant Smith

further states she did not have any communication with the individuals involved in Plaintiff's

transfer and had no knowledge of the same.  (*Id*., ¶ 6, 8.)  Plaintiff does not mention Defendant

Smith, dispute her affidavit, or provide additional factual allegations or evidence with respect to

Defendant Smith in his Response.  Therefore, Defendant Smith's sworn statements in her

affidavit regarding her lack of personal participation are undisputed and claims against her fail as

a result.

Plaintiff claims Defendant Michaels, in his role as Case Manager at FLCF, "conspired

[with Defendants Estep and the Assistant Warden] and had the plaintiff transferred in retaliation

for his complaints and grievances."  (Compl*., ¶ 77.)  Defendant Michaels states in her affidavit

that she was not involved in the decision to transfer Plaintiff to FLCF and had no knowledge of

Plaintiff's transfer from FLCF on November 10, 2005.  (Mot., Ex. D [hereinafter "Michaels

Aff."], ¶¶ 6, 8.)  Defendant Michaels further states she did not have any communication with the

individuals involved in Plaintiff's transfer and that her "duties and responsibilities did not

include being involved in any decisions to transfer offenders to and from FLCF."  (*Id*., ¶ 7, 3.)

In the Response, Plaintiff claims CDOC policy required that Defendant Michaels "initiate and

approve [Plaintiff's] transfer."  (Resp. at 4.)  Plaintiff references three Offender Grievance Forms

filed from November 2005 to January 2006 as evidence of Defendant Michaels' personal

participation.  (*Id*., Ex. 1 at 9–11.)  These documents are copies of Plaintiff's grievances filed

---

[5] Neither the Complaint nor the Response contain a single allegation that Defendant
Smith was in any way involved in Plaintiff's transfer to FLCF on August 26, 2005.

against Defendants Estep and Michaels. They do not, however, contradict or dispute Michaels' sworn factual statements that she was not involved in Plaintiff's transfer to FLCF. Having produced no evidence or facts to support his bare allegations against Defendant Michaels, her sworn statements are undisputed.

Viewing the factual record and reasonable inferences therefrom in the light most favorable to Plaintiff, *Byers*, 150 F.3d at 1274, the undisputed facts show that Defendants Zalman, Butler, Michaels, and Smith did not personally participate in either Plaintiff's August 2005 transfer or his November 2005 transfer. Therefore, this court recommends that summary judgment be granted in favor of Defendants Zalman, Butler, Smith and Michaels as to Claim Two.

### 2.   *Defendant Estep*

Plaintiff alleges that Defendant Estep had him transferred from FLCF to another facility in November 2005.[6] (Compl. at 13–14.) While Defendants contend Plaintiff has failed to establish that Defendant Estep personally participated Plaintiff's transfers (Mot. at 6), in Defendant Estep's affidavit he states, "I authorized the transfers of Mr. Whitington." (Estep Aff., ¶ 9.) The court considers this some evidence of Defendant Estep's personal participation in the November 2005 transfer. Defendant Estep argues, however, that he did not authorize

---

[6] Plaintiff's Complaint and Response are devoid of allegations concerning Defendant Estep's involvement in the August 2005 transfer of the plaintiff from LCF to FLCF. Therefore, the court restricts its analysis to determining whether Plaintiff's retaliation claim based on the November 2005 transfer from FLCF survives summary judgment.

Plaintiff's transfers as a result of improper motivation occasioned by Plaintiff's multiple grievances.  (Mot. at 11.)

Defendant Estep states in his affidavit, "[a]t the time of Mr. Whitington's transfers, I did not have any independent knowledge of the grievances or complaints that [Mr. Whitington] was filing."  (Estep Aff., ¶ 8.)  In response, Plaintiff has produced several memoranda directed to the plaintiff from Defendant Estep dated prior to his November 2005 transfer, addressing Plaintiff's grievances about prison employment, availability of hygiene items, inmate shower conditions, and prison staffing patters.  (Resp., Ex. 1 at 5–7.)  In one such memo, dated June 8, 2005—while Plaintiff was incarcerated at LCF where Defendant Estep served as Warden and prior to either of Plaintiff's transfers—Defendant Estep noted that Plaintiff had filed twenty-six (26) grievances since January 2005.  (*Id*. at 7.)  As a result, Defendant Estep specifically warned Plaintiff that his use of the grievance system would be limited if he continued to file "duplicate/frivolous" grievances.  (*Id*.)  The evidence shows, therefore, that whether Defendant Estep knew about Plaintiff's grievances at the time he approved the transfers remains a contested material fact.

Additionally, Defendant Estep argues that the evidence shows Plaintiff's transfers were solely the result of CDOC-wide administrative concerns unrelated to Plaintiff's grievances. (Mot. at 11–13.)  In support, Defendant Estep attaches the Affidavit of Rex Kohl, the Classification Officer liaison for FLCF who finalized Plaintiff's transfer classification on November 10, 2005.  (Mot., Ex. H [hereinafter "Kohl Aff."], ¶ 3–5.)  According to Officer Kohl, in November 2005, FLCF was in the process of being designated as the primary facility to house "geriatric, chronically ill, and physically disabled offenders" and, therefore, the CDOC sought to

14

transfer those offenders with a medium custody level designation who did not fit into these categories.  (*Id.*, ¶¶ 14–15.)  "This was done to make room for offenders from other facilities that had these medical concerns and could be housed and cared for at FLCF."  (*Id.*)  Officer Kohl states, "Mr. Whitington did not have these types of medical concerns and was transferred to make room for other offenders in the CDOC that had these medical concerns."  (*Id.*, ¶ 16.)  The court notes, however, that during this time Plaintiff was chronically ill with Hepatitis C.  Neither side addresses whether Hepatitis C qualified Plaintiff for placement at FLCF.  Accordingly, the court finds that the evidence presented in Officer Kohl's affidavit does not resolve the contested issue of motivation for the November 2005 transfer..

Furthermore, where evidence of temporal proximity or a chronology of events indicating suspicious timing exists, it may be sufficient to support allegations of retaliation.  *See Maschner*, 899 F.2d at 949.  Plaintiff claims that upon arrival at FLCF in August 2005, he "wrote Warden Estep regarding staff conduct and inappropriate policies."  (Resp. at 4.)  Plaintiff has submitted copies of the grievances he filed against Defendant Estep on October 10, 2005 (Resp., Ex. 1 at 28), and November 2, 2005 (*id.* at 27), respectively.  Plaintiff has also provided a December 12, 2005 memorandum from Defendant Estep responding to Plaintiff's October 27, 2005 letter voicing a variety of complaints (*id.* at 5–6), and a July 25, 2005 letter from Defendant Estep to Plaintiff upholding the DOC's ability to limit inmate grievances.  (*Id.* at 4.)  Plaintiff was transferred from FLCF on November 10, 2005.  (Resp. at 4; Estep Aff., ¶ 6.)  In light of the temporal proximity between Plaintiff's grievances against Defendant Estep and the latter's authorization of Plaintiff's November 2005 transfer, the court finds there are genuine disputed

15

issues of fact for resolution at trial, precluding summary judgment as to whether Defendant

Estep's authorization was retaliatory in nature.

Finally, Defendant Estep contends he is entitled to qualified immunity against Plaintiff's

retaliation claim.  (Mot. at 19–22.)  Qualified immunity shields government officials sued in

their individual capacities from liability for civil damages provided their conduct when

committed did not violate "clearly established statutory or constitutional rights of which a

reasonable person would have known."  *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).  When

analyzing the issue of qualified immunity, the court must determine (1) whether the plaintiff has

sufficiently alleged violation of a statutory or constitutional right; and (2) whether the right was

clearly established at the time of the violation.  *Pearson v. Callahan*, 129 S. Ct. 808, 817 (2009).

As noted above, the Plaintiff has sufficiently alleged a violation of his First Amendment

rights to survive summary judgment.  In the Tenth Circuit, it has long been held that filing

formal prisoner grievances falls within the conduct protected by the First Amendment, *see*

*Nordgren*, 762 F.2d at 853, and it has been clearly established since at least 1990 that "prison

officials do not have the discretion to punish an inmate for exercising his First Amendment

rights by transferring him to a different institution."  *Frazier v. Dubois*, 922 F.2d 560, 562 (10th

Cir. 1990).  Defendant Estep, therefore, is not entitled to qualified immunity as to Claim Two of

the Second Amended Prisoner Complaint at this stage of the litigation.

## II.     *Claim Five – Eighth Amendment*

In Claim Five, as previously noted, Plaintiff alleges he was denied and/or delayed

necessary Hepatitis C treatment as a result of a CDOC protocol requiring attendance at drug and

alcohol classes as a prerequisite to Hepatitis C treatment.  (Compl. at 22–24.)  Plaintiff claims

Defendant Bullard's denial of his grievance regarding the denial of treatment constituted

deliberate indifference to his medical needs.  (*Id.*)  Plaintiff also alleges that, to the extent

Defendant Ortiz was involved in the creation of the treatment/education protocol involving

Hepatitis C, he too was deliberately indifferent to Plaintiff's medical needs.  (*Id.*)  Defendants

move for summary judgment, contending Plaintiff has failed to allege personal participation of

either Defendants Ortiz or Bullard in any misconduct.  (Mot. at 6–9.)  Defendants also argue that

Plaintiff's Eighth Amendment claim fails on the merits.  (*Id.* at 13–19.)

Prison officials violate the Eighth Amendment if their "deliberate indifference to serious

medical needs of prisoners constitutes the unnecessary and wanton infliction of pain." *Estelle v.*

*Gamble*, 429 U.S. 97, 104 (1976) (internal quotation marks omitted).  "[A] prisoner must allege

acts or omissions [of prison officials] sufficiently harmful to evidence deliberate indifference to

serious medical needs." *Self v. Crum*, 439 F.3d 1227, 1230 (10th Cir. 2006) (quoting *Estelle*,

429 U.S. at 106).  The test for deliberate indifference involves both an objective and a subjective

component. *Sealock v. Colo.*, 218 F.3d 1205, 1209 (10th Cir. 2000).  The objective component

requires that the "deprivation alleged must be, objectively, sufficiently serious." *Farmer v.*

*Brennan*, 511 U.S. 825, 834 (1994) (quoting *Wilson v. Seiter*, 501 U.S. 294, 298 (1991))

(internal quotation marks omitted).  The subjective component is met if the defendant "knows of

and disregards an excessive risk to inmate health or safety." *Sealock*, 218 F.3d at 1209.

### 1.      Objective Test

Defendants have submitted the affidavit of Dr. Paula Franz, CDOC Chief Medical

Officer, signed and dated August 12, 2009.  (Mot., Ex. I [hereinafter "Franz Aff."], ¶ 1.)  The

first twenty-two pages of Dr. Franz' Affidavit set forth the Plaintiff's lengthy medical history,

including his diagnosis of Hepatitis C in August 2001.[7]  (*Id.*, ¶ 22 et seq.)  At the onset, Plaintiff

began a regimen of liver function tests and evaluation every six months which has continued to

date.  (*Id.,* ¶ 22.)  In March 2005, Plaintiff was found eligible for Hepatitis C treatment, but he

declined the treatment because he did not want to hurt his chances of going to a minimum

security facility.  (*Id.*, ¶ 61.)  Plaintiff asked his medical provider if waiting for treatment for two

to three years would harm his health and was told that given "his low enzymes," waiting would

not cause a problem.  (*Id.*)  In October 2005, Plaintiff requested a referral to a drug and alcohol

treatment program, (*id.*, ¶ 68) and signed a Substance Abuse Treatment Contract Hepatis C

Protocol on November 4, 2005.  (*Id.*, ¶ 70.)  By October 6, 2006, almost a year later, Plaintiff

had <u>not</u> become qualified, based upon declining medical reviews or negative lab tests, for a liver

biopsy related to Hepatitis C, which indicated stability of his condition.  (*Id.*, ¶ 84.)  It appears

from his psychiatric records, however, that Plaintiff's mental illness issues were escalating.  (*Id.*)

Plaintiff finally completed Therapeutic Community Treatment on October 17, 2008, but

continued to refuse to cooperate with psychiatric treatment and was not taking his prescribed

medications.  (*Id.*, ¶¶ 105–109.)  Dr. Franz noted that the Plaintiff had a documented history of

---

[7] Pages 26 - 77 of Dr. Franz' Affidavit consists of various lab reports and medical records related to Plaintiff's Hepatitis C.

poor medication compliance, refusing and/or stopping medications, refusing lab-monitoring, and failing to appear for clinic appointments.  (*Id.*, ¶¶ 114, 116.)

According to Dr. Franz, "Hepatitis C virus can develop resistance when treatment compliance is not absolute."  (*Id.*, ¶ 116.)  Dr. Franz states that consistent lab-monitoring and regular attendance at clinic appointments is "imperative" since "Hepatitis C treatment can cause profound changes in white blood cell count, hemoglobin, platelets, and thyroid function."  (*Id.*)  In light of Plaintiff's history of refusing medication, lab-monitoring, and clinic appointments, Dr. Franz seriously questions whether Plaintiff is a good candidate for treatment of Hepatitis C at all or whether treatment with pharmaceuticals would actually be harmful in the Plaintiff's particular case.  (*Id.*, ¶ 118.)

Dr. Franz notes that Plaintiff has a lengthy and well-established history of psychiatric illness and substance abuse.  (*Id.*, ¶ 112.)  According to Dr. Franz, "the medications used for the treatment of Hepatitis C have significant potential to cause destabilization of psychiatric illness." (*Id.*, ¶ 115.)  Dr. Franz states, "the initiation of Hepatitis C treatment requires stabilization of psychiatric illness prior to the initiation" of treatment.  (*Id.*)  Dr. Franz states that any Hepatitis C treatment "will carry a substantial risk of psychiatric destabilization in [Mr. Whitington]."  (*Id.*)

Dr. Franz confirms that as of August 12, 2009, Plaintiff shows no evidence of end stage liver disease nor is there any evidence that Plaintiff has had substantial progression of liver disease while waiting for stabilization of his psychiatric illness and completion of drug and alcohol programs.  (*Id.*, ¶ 117.)

The sworn statements of Dr. Franz, supported by the medical records, show that Plaintiff's medical condition, while serious, is not necessarily amenable to treatment and that the delay in treatment – especially in light of the fact that treatment is not necessarily warranted or advisable – has not been harmful to the Plaintiff.  The Plaintiff has presented no evidence whatsoever to refute the medical records and Dr. Franz' assessment that delay in treatment has caused him no harm.  Only delays that result in "substantial harm" violate the Eighth Amendment.  *See Sealock*, 218 F.3d at 1210 (delay in providing medical care to a prisoner constitutes an Eighth Amendment violation only if it results in substantial harm) (citing *Olsen v. Stotts*, 9 F.3d 1475, 1477 (10th Cir. 1993) (18 month delay for elective heart surgery did not violate Eighth Amendment)); *White v. State of Colorado*, 82 F.3d 364, 366–67 (10th Cir. 1996) (two-year delay in surgery on inmate's leg did not violate the Eighth Amendment because the delay caused no further damage to the leg).

Therefore, based upon the undisputed material facts, Plaintiff has failed to present evidence sufficient to satisfy the objective component of an Eighth Amendment violation.

## 2. *Subjective Test*

Plaintiff also fails the subjective component on his Fifth Claim for Relief.  To violate the Cruel and Unusual Punishments Clause, a prison official must have a "sufficiently culpable state of mind." *Farmer v. Brennan*, 511 U.S. 825, 833 (1970).  "[T]he official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer*, 511 U.S. at 837.  "A negligent failure to provide adequate medical care, even one constituting medical malpractice, does not give rise to a

constitutional violation." *Perkins v. Kansas Dept. of Corrections*, 165 F.3d 803, 811 (10th Cir. 1999) (citing *Estelle v. Gamble*, 429 U.S. at 105–06). Deliberate indifference requires a higher degree of fault than negligence or even gross negligence. *Berry v. Muskogee*, 900 F.2d 1489, 1495–96 (10th Cir. 1990) (citation omitted). "It is obduracy and wantonness, not inadvertence or error in good faith, that characterize the conduct prohibited by the Cruel and Unusual Punishments Clause." *Whitley v. Albers*, 475 U.S. 312, 319 (1986). "Deliberate indifference is a stringent standard of fault," under which "[a] showing of simple or even heightened negligence will not suffice." *Giron v. Corrs. Corp. of America*, 191 F.3d 1281, 1285–86 (10th Cir. 1999).

Implicit in having a culpable state of mind when undertaking alleged wrongful activities, is the requirement that a Defendant actually have participated in the complained of activities. Plaintiff's Eighth Amendment claim against Defendant Bullard is based on Bullard's denial of Plaintiff's November 15, 2005 grievance wherein Plaintiff complained of CDOC policies that required him to complete drug and alcohol classes in order to qualify for Hepatitis C treatment. (Resp., Ex. 1 at 26.) On June 29, 2006, Defendant Bullard responded to Plaintiff's grievance, indicating that the Hepatitis C "protocol has been accepted in a settlement of a recent court case as an adequate prerequisite to the treatment for Hepatitis C," and was "based upon sound medical principles." (*Id*. at 25; Bullard Aff. at 4.) Defendant Bullard informed Plaintiff he could find no authority allowing him to suspend the Hepatitis C treatment protocol in order to hasten Plaintiff's treatment. (*Id*.). Defendant Bullard's "denial of [a] grievance[] alone is insufficient to establish personal participation in the alleged constitutional violations." *Larson v. Meek*, 240 F. App'x 777, 780 (10th Cir. 2007); *see also Thomas v. Ortiz*, 07-cv-00400-WDM-MEH, 2007 WL

3256708, *4 (D. Colo. Nov. 1, 2007) (an official deriving his knowledge of an inmate's alleged injury from the grievance process is not personally liable unless he was directly involved in the initial medical decision).

Additionally, Plaintiff has failed to produce any evidence showing that Defendant Ortiz participated in the creation or implementation of the Hepatitis C treatment policy or that Defendant Ortiz had any input into Plaintiff's medical care.  Rather, Defendant Ortiz's only involvement was by virtue of his role as Executive Director, with "final say in all policy questions and issuance of regulations concerning the CDOC."  (Ortiz Aff., ¶ 3.)  However, "[p]ast input into the formulation of prison regulations . . . is a connection far too attenuated to support liability under § 1983."  *Grimsley v. MacKay*, 93 F.3d 676, 680 (10th Cir. 1996).

Neither Defendant Bullard nor Defendant Ortiz are alleged to be trained medical providers.  As Dr. Franz has stated and the Plaintiff has failed to dispute, Hepatitis C treatment can be delayed for long periods without significant harm to the patient, and, in fact, some patients are simply not good candidates for pharmaceutical treatment of Hepatitis C and can actually be harmed thereby.  Under the circumstances of this case and the undisputed facts on record, Plaintiff has failed to bring forth any evidence that either Defendant Bullard or Ortiz acted in a wanton manner indifferent to Plaintiff's medical needs by insisting that Plaintiff follow the protocols and guidelines for Hepatitis C infected prisoners before receiving pharmaceutical treatment.

### 3.      Qualified Immunity

Finally, both Defendant Bullard and Defendant Ortiz are entitled to qualified immunity on Claim Five.  The undisputed facts of the case establish that the plaintiff has not sufficiently alleged violation of his Eighth Amendment rights, and a patient's right to immediate pharmaceutical treatment for Hepatitis C, regardless of any underlying conditions present in the patient, is not a right which was clearly established at the time of Plaintiff's alleged constitutional  violation.  *See Pearson v. Callahan*, 129 S. Ct. 808, 817 (2009).

"When a defendant asserts the defense of qualified immunity, the burden shifts to the plaintiff to overcome the asserted immunity."  *Ahmad v. Furlong*, 435 F.3d 1196, 1198 (10th Cir. 2006) (citing *Medina v. Cram*, 252 F.3d 1124, 1128 (10th Cir. 2001)).  Plaintiff has failed to come forward with any evidence to overcome the asserted immunity.  Therefore, Defendants Bullard and Ortiz are entitled to summary judgment on Plaintiff's fifth claim for relief.

## III.     Preliminary Injunction

Plaintiff claims that in July of 2009 he was warned that the amount of documents he possessed in his cell exceeded that permitted by CDOC regulations.  (Mot. for PI at 3.)  Plaintiff was directed to either send the documents to an attorney or destroy them.  (*Id*.)  Over the next week, Plaintiff was continually reminded to reduce the amount of documents in his cell.  (*Id*.)  Plaintiff states that on July 31, 2009, he informed a prison official he had no intention of reducing the amount of documents he possessed and that the officers were going "to need to take them if they wanted him to get rid of the documents."  (*Id*.)  Plaintiff claims that on August 1,

2009, prison officials entered Plaintiff's cell, confiscated and removed numerous documents and other property.  (*Id*. at 3–4.)  Plaintiff now seeks the return of that property.  (*Id*. at 3.)

Injunctive relief is a drastic remedy and is granted only in cases where the right to relief is clearly established.  *Goldammer v. Fay*, 326 F.2d 268, 270 (10th Cir. 1964).  The burden is on the movant to establish his right to the relief requested.  *Penn v. San Juan Hospital, Inc.*, 528 F.2d 1181, 1185 (10th Cir. 1975).  To obtain a preliminary injunction under Rule 65(a), the plaintiff must show that (1) he will suffer irreparable injury unless the injunction issues; (2) the threatened injury to the moving party outweighs whatever damage the proposed injunction may cause the opposing party; (3) the injunction, if issued, would not be adverse to the public interest; and (4) there is a substantial likelihood that the moving party will eventually prevail on the merits.  *Lundgrin v. Claytor*, 619 F.2d 61, 63 (10th Cir. 1980).  The plaintiff's right to relief must be clear and unequivocal.  *Penn*, 528 F.2d at 1185.

### 1.  *Irreparable Harm*

"To constitute irreparable harm, an injury must be certain, great, actual and not theoretical."  *Heideman v. S. Salt Lake City*, 348 F.3d 1182, 1189 (10th Cir. 2003) (internal quotation marks omitted).  "Therefore, to satisfy this factor of the preliminary injunction test, a movant must establish both that harm will occur, and that, when it does, such harm will be irreparable."  *Vega v. Wiley*, 259 F. App'x 104, 106 (10th Cir. 2007).  " '[B]ecause a showing of probable irreparable harm is the single most important prerequisite for the issuance of a preliminary injunction, the moving party must first demonstrate that such injury is likely before the other requirements for the issuance of an injunction will be considered.' "  *Dominion Video*

*Satellite, Inc. v. Echostar Satellite Corp.*, 356 F.3d 1256, 1260 (10th Cir. 2004) (quoting *Reuters Ltd. v. United Press Int'l, Inc.*, 903 F.2d 904, 907 (2d Cir. 1990)).

Plaintiff claims documents obtained through discovery, court pleadings and medical records related to this and other cases Plaintiff is currently litigating were among the documents confiscated.  (Mot. for PI at 10.)  As they relate to this action, Plaintiff claims medical records showing he qualified for Hepatitis C treatment were among the documents seized.  (*Id.*)  However, whether Plaintiff qualified for Hepatitis C treatment at one point in his past is not material or even in dispute.  (*See* Bullard Aff. at 4 ("Upon investigation, I learned that Mr. Whitington had already been referred to the drug and alcohol classes."))

Plaintiff also claims he is "unable to produce <u>any</u> evidence to this court as attachments . . . to his responses or reply's to any of the defendants' dispositive motions."  (*Id.* [emphasis added]).  However, the court notes that on Plaintiff's Response to Defendants Motion for Summary Judgment contains seventy-one pages of documents including, various medical records, grievance forms and letters.  (*See* Resp., Ex. 1.)  Plaintiff has failed to specify any particular documents, except for the medical records above, that he needs to pursue his litigation endeavors.  Plaintiff has failed to show that the confiscation of his documents would cause certain, great, and actual harm to his ability to litigate any of his pending cases.  Therefore, the court finds that Plaintiff has failed to show that he would suffer irreparable harm if a preliminary injunction is not issued.

### 2.       *Balance of Harms*

Plaintiff claims the confiscation of his documents will hamper his ability to litigate his claims.  (Mot. for PI at 9–11.)  Plaintiff was given the opportunity to sort his documents and to keep documents he considered crucial to his litigation.  (*Id*. at 4–5.)  He chose not to do so.  (*Id*.) "[P]rison rules permitting inmates two-cubic feet of legal materials in their cells [are] 'reasonable and necessary for orderly maintenance of the facility and proper security.' "  *Green v. Johnson*, 977 F.2d 1383, 1390 (10th Cir. 1992).  The regulation at issue is in place in order to ensure safety, security and minimize facility fire dangers.  (Resp. to Mot for PI at 13.) "[M]aintaining institutional security and preserving internal order and discipline are essential goals that may require limitation or retraction of the retained constitutional rights of both convicted prisoners and pretrial detainees."  *Bell v. Wolfish*, 441 U.S. 520, 546 (1979).  This court finds the threatened injury to Plaintiff does not outweigh the damage the proposed injunction may cause the Defendants.

### 3.       *Public Interest*

The entry of the proposed preliminary injunction would, in essence, allow Plaintiff to possess an amount of documents in excess of CDOC regulations directed at institutional safety and security.  An injunction that jeopardizes prison safety and security is clearly adverse to the public interest.  Indeed, courts "must accord substantial deference to the professional judgment of prison administrators, who bear significant responsibility for defining the legitimate goals of a corrections system and for determining the most appropriate means to accomplish them." *Overton v. Bazzetta*, 539 U.S. 126, 132 (2003).

26

***4.        Substantial Likelihood of Success on the Merits***

In light of the court's findings herein, there is not a substantial likelihood Plaintiff will

prevail on the merits of the present suit.  *See Lundgrin*, 619 F.2d at 63.

Therefore, Plaintiff have failed to meet any of the criteria necessary for the court to grant

injunctive relief in this case.

**WHEREFORE**, for the foregoing reasons, the court respectfully

**RECOMMENDS** that "Defendants' Second Motion for Summary Judgment" (Doc. No.

112) be **GRANTED IN PART** and that summary judgment be entered in favor of Defendants

Zalman, Butler, Michaels, Smith, Ortiz, and Bullard as to all remaining claims.  The court

**FURTHER RECOMMENDS** that "Defendants' Second Motion for Summary

Judgment" (Doc. No. 112) be **DENIED** insofar as it seeks entry of summary judgment in favor

of Defendant Estep on Claim Two of the Second Amended Prisoner Complaint.  The court

**FURTHER RECOMMENDS** that Plaintiff's Motion for Preliminary Injunction (Doc.

No. 120) be **DENIED**.

## ADVISEMENT TO THE PARTIES

Within fourteen days after service of a copy of the Recommendation, any party may

serve and file written objections to the Magistrate Judge's proposed findings and

recommendations with the Clerk of the United States District Court for the District of Colorado.

28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *In re Griego*, 64 F.3d 580, 583 (10th Cir. 1995).  A

general objection that does not put the District Court on notice of the basis for the objection will

not preserve the objection for *de novo* review.  "[A] party's objections to the magistrate judge's

report and recommendation must be both timely and specific to preserve an issue for de novo review by the district court or for appellate review." *United States v. One Parcel of Real Property Known As 2121 East 30th Street, Tulsa, Oklahoma*, 73 F.3d 1057, 1060 (10th Cir. 1996). Failure to make timely objections may bar *de novo* review by the District Judge of the Magistrate Judge's proposed findings and recommendations and will result in a waiver of the right to appeal from a judgment of the district court based on the proposed findings and recommendations of the magistrate judge. *See Vega v. Suthers*, 195 F.3d 573, 579-80 (10th Cir. 1999) (District Court's decision to review a Magistrate Judge's recommendation *de novo* despite the lack of an objection does not preclude application of the "firm waiver rule"); *One Parcel of Real Property*, 73 F.3d at 1059-60 (a party's objections to the Magistrate Judge's report and recommendation must be both timely and specific to preserve an issue for *de novo* review by the District Court or for appellate review); *International Surplus Lines Insurance Co. v. Wyoming Coal Refining Systems, Inc*., 52 F.3d 901, 904 (10th Cir. 1995) (by failing to object to certain portions of the Magistrate Judge's order, cross-claimant had waived its right to appeal those portions of the ruling); *Ayala v. United States*, 980 F.2d 1342, 1352 (10th Cir. 1992) (by their

failure to file objections, plaintiffs waived their right to appeal the Magistrate Judge's ruling).

*But see, Morales-Fernandez v. INS*, 418 F.3d 1116, 1122 (10th Cir. 2005) (firm waiver rule does

not apply when the interests of justice require review).

Dated this 9th day of December, 2009.

**BY THE COURT:**

Kathleen M. Tafoya
United States Magistrate Judge